FILED

PEARSON, J.

2011 SEP 30 PM 5: 06

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STARK-TUSCARAWAS-WAYNE JOINT SOLID WASTE MANAGEMENT DISTRICT, *et al.*, ) ) ) | CASE NO. 5:10CV00119 |
| ) | |
| Plaintiffs, ) | JUDGE BENITA Y. PEARSON |
| ) | |
| v. ) | |
| ) | |
| AMERICAN LANDFILL, INC., *et al.*, ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Defendants. ) | **ORDER** (Resolving ECF Nos. 21, 54) |

This matter is before the Court on Defendant Waste Management, Inc.'s (referred to as

"WMI") original and renewed motions to dismiss for lack of personal jurisdiction.[1] ECF Nos.

21, 54. Plaintiffs, Stark-Tuscarawas-Wayne Joint Solid Waste Management District, Citizens

Against American Landfill Expansion, Jill Van Voorhis, Vivian Baier, (collectively referred to as

"Plaintiffs") oppose the original and renewed motions. ECF Nos. 24, 59. For the reasons that

follow, WMI.'s motion is denied.

### I. Factual and Procedural Background

The instant case involves the alleged improper handling and disposal of solid and

hazardous waste, hazardous waste constituents, landfill gas, leachate, contaminants and other

---

[1] The Court will make occasional reference to both motions but the renewed motion controls.

(5:10CV00119)

hazardous substances at Defendant American Landfill.[2]  ECF Nos. 1 at 3, ¶ 3; 50 at 3, ¶ 3.

Plaintiffs assert that Defendants WMI. and American Landfill, Inc. have improperly handled and

disposed of solid and hazardous waste at its landfill in violation of the Resource Conservation

and Recovery Act, 42 U.S.C. § 6972(a)(1)(A) and (B).  ECF Nos. 1 at 2-4; 50 at 2-4.  Plaintiffs

are seeking injunctive and other forms of relief.[3]  ECF Nos. 1 at 6; 50 at 6.

The amended complaint[4] alleges that WMI is the "ultimate parent corporation of a large

group of Waste Management-related and controlled entities," including the owner and operator

of American Landfill, Inc.  ECF Nos. 1 at 2-7; 50 at 2-7.  WMI, a Delaware Corporation, is the

sole shareholder of Waste Management Holdings, Inc., another Delaware corporation.  ECF Nos.

21 at 2; 54 at 2-3.  Waste Management Holdings, Inc., in turn, is the sole shareholder of Waste

Management of Ohio Inc., an Ohio corporation.  ECF Nos. 1 at 7-8; 50 at 8-9.  Waste

Management of Ohio is the sole shareholder of American Landfill.  ECF Nos. 21 at 3; 24 at 2.

On August 20, 2010, WMI moved to dismiss the complaint against it for lack of personal

jurisdiction.  ECF No. 21.  Plaintiffs timely filed a memorandum in opposition to which

---

[2]  This case has several defendants–some of whom will be mentioned in this writing.  The
motions resolved by this writing, however, are only the original and renewed motion to dismiss
filed by Defendant WMI.  American Landfill is a co-defendant of the movant, WMI.

[3]  Pursuant to stipulation, Plaintiffs' claims for civil penalties arising from alleged
violations of the Resource Conservation and Recovery Act ("RCRA") Subtitle D and Ohio's
solid waste laws and the related motion to dismiss were withdrawn, without prejudice to refiling,
if the appropriate circumstances were to arise.  See ECF No. 53 and Order, July 23, 2011, ECF
No. 81.

[4]  For convenience, the original complaint, ECF No. 1, may also be cited, in addition to
the amended complaint, ECF No. 50.

(5:10CV00119)

Defendant replied.  ECF Nos. 24 and 26.  Defendant, thereafter, renewed its motion to dismiss

the complaint for lack of personal jurisdiction and Plaintiffs timely filed an opposition to which

WMI replied.  ECF Nos. 54, 59, and 74.

## II. Discussion

Defendant claims that the Court lacks jurisdiction under the Ohio long-arm statute and

lacks both general and specific jurisdiction.  ECF Nos. 21 at 5-15; 54 at 5-16.  The Court finds

that the  United States District Court for the Northern District of Ohio has personal jurisdiction

over WMI based upon the Ohio long-arm statute and specific jurisdiction.

### A. Ohio Long Arm Statute

"When determining whether Ohio has jurisdiction over a foreign [or non-resident]

corporation, courts must engage in a two step inquiry." *State ex rel. Barnabus Consulting Ltd. v.*

*Riverside Health System, Inc.*, Case No. 07AP-1014 2008 WL 2588579, at *3 ¶ 13 (Ohio App.

10 Dist. June 30, 2008) (citing *Toma v. Corrigan*, 92 Ohio St.3d 589, 592 (2001)).  First, a court

must determine whether Ohio's long-arm statute, and the applicable Ohio Rule of Civil

Procedure confer jurisdiction. *State ex rel. Barnabus Consulting Ltd.*, 2008 WL 2588579 at *3.

"If the court affirmatively answers the first inquiry, it then must determine whether granting

jurisdiction would deprive the foreign corporation of due process of law under the Fourteenth

Amendment of the United States Constitution." *Id.*

Plaintiffs bears the burden of establishing that jurisdiction exists. *Id.* (citing *Serras v.*

*First Tennessee Bank National Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  In ruling on a

motion to dismiss for lack of personal jurisdiction based upon written submissions, the Court

-3-

(5:10CV00119)

must view the pleadings and affidavits in the light most favorable to the plaintiff. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-22 (6th Cir. 2000). The plaintiff's burden is "relatively slight," requiring merely a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal. *Id.*; *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *see also Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) ("When the district court dismisses a complaint pursuant to Rule 12(b)(2) without conducting an evidentiary hearing on the issue of personal jurisdiction . . . the plaintiff need only make a *prima facie* showing of jurisdiction . . . [and the court] will not consider facts proffered by the defendant that conflict with those offered by the plaintiff[.]"). A *prima facie* showing is made by "establishing with reasonable particularity sufficient contacts between [defendant] and the forum state to support jurisdiction." *Neogen Corporation v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Under this standard, dismissal is "proper only if *all* the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (emphasis in original).

      In Ohio, the first prong of the personal jurisdiction inquiry is satisfied if the defendant's conduct falls within the requirements of Ohio's long-arm statute, codified at Ohio Rev. Code § 2307.382 and providing, in pertinent part:

> (A)    A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1)    Transacting any business in this state;
>
> (2)    Contracting to supply services or goods in this state.

Ohio Rev. Code § 2307.382(A). Additionally, Ohio's long-arm statute also permits jurisdiction

-4-

(5:10CV00119)

over non-resident defendants that regularly solicit business in Ohio, engage in conduct in Ohio or

derive substantial revenues from the sale in Ohio of goods or services produced or provided by

the non-resident defendant. *Id*; *see also* ECF No. 54 at 5.

  To "transact" means "to prosecute negotiations; to carry on business; to have dealings. . ."

*State ex rel. Barnabus Consulting Ltd.*, 2008 WL 2588579 at *3, ¶ 14 (citing *Kentucky Oaks*

*Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75 (1990)). "Transacting any

business" encompasses more than just contracting; it also includes business negotiations that the

parties have only partially brought to conclusion. *Id*. That a non-resident business solicited

business in Ohio, alone, is not sufficient to constitute "transacting any business." *U.S. Sprint*

*Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 185 (1994).

  Courts have identified two factors that help determine whether an out-of-state defendant

"transacted business" within the meaning of the long-arm statute. *See, e.g., Paglioni & Assocs.,*

*Inc. v. WinnerComm, Inc.*, No. 2:06CV00276, 2007 WL 852055 (S.D. Ohio Mar. 16, 2007);

*Shaker Constr. Group, LLC v. Schilling*, No. 1:08CV278, 2008 WL 4346777 (S.D. Ohio Sept.

18, 2008). The first factor is whether the out-of-state defendant initiated the dealing. *Paglioni*,

2007 WL 852055 at *9. If the defendant "reached out" to the forum state to create a business

relationship, then the defendant has transacted business within the forum state. *Id*. The question

of whom initiates the contact is not alone determinative. *Military Supply, Inc. v. Reynosa Const.,*

*Inc.*, No. 19326, 2000 WL 109783 at n.3 (Ohio App. 9 Dist. Jan. 26, 2000). The second factor

that helps determine whether an out-of-state defendant "transacted business" is whether the

parties' negotiations or discussions took place within the forum state, or with terms affecting the

(5:10CV00119)

forum state. *Paglioni*, 2007 WL 852055 at *9. If the parties negotiated in Ohio with provisions affecting Ohio, the nonresident transacted business in Ohio. *Shaker Construction*, 2008 WL 4346777 at *3.

In its renewed motion to dismiss for lack of personal jurisdiction, WMI, admits its non-residency status and denies that the Ohio long-arm statute is applicable because none of the Ohio long-arm statute preconditions are satisfied. ECF No. 54 at 5. WMI contends that it does not (1) transact business of any kind in Ohio, (2) contract to supply goods or services in Ohio, (3) solicit business in Ohio, (4) engage in any conduct in Ohio, or (5) derive substantial revenues from any such activities. ECF No. 54 at 5-6. WMI explains that it owns all of the shares of stock of a Delaware holding corporation, which also has no presence in Ohio. ECF No. 54 at 5.

WMI further contends that Plaintiffs' claims against it do not arise directly from the limited contacts WMI actually has with the state–its ownership of a company that owns a company that owns and operates a landfill in Ohio. ECF No. 54 at 6. Rather, WMI argues that Plaintiffs' claims arise from American Landfill's design and operation. ECF No. 54 at 6.

Plaintiffs counter that WMI is subject to jurisdiction under the Ohio long-arm statute because the cause of action arises from WMI transacting business in Ohio, contracting to supply services or goods in Ohio, and using Ohio property, namely the American Landfill. ECF Nos. 24 at 11; 59 at 12.

### 1. WMI "Reached Out" to the, Ohio, the "Forum State"

Plaintiffs argue that WMI has "reached out" to the forum state by controlling and managing Ohio-based landfills through WMI's network of wholly-owned subsidiaries. One such

-6-

(5:10CV00119)

landfill is co-Defendant American Landfill. ECF No. 1 at 7, ¶ 24. WMI's control extends to all

facets of the landfill's operations, including environmentally related activities such as

environmental compliance and management of landfill gas. ECF No. 1 at 7, ¶ 24. WMI prepares

consolidated financial reports for itself and for its subsidiaries, including American Landfill, in

which it explains that "[w]e manage and evaluate our principal operations through five Groups.

Our four geographic Groups, which include our Eastern, Midwest, Southern and Western

Groups, provide collection, transfer, recycling[,] and disposal services."[5] ECF No. 24-1 at 4.

Defendant comprehensively manages American Landfill's operations through a

"Compliance Management System" that issues "Task Assignment Forms." ECF No. 24-9. The

Task Assignment Forms "appl[y] to active landfills owned and/or operated by Defendant." ECF

No. 24-9. Assigned tasks include, for example, annual groundwater inspections, government

reports, rim wheel servicing policy, industrial power truck policy, operating record review policy,

equipment safety inspections and fire safety inspections. ECF No. 24-9. In sum, Plaintiffs argue

that WMI "reached out" to the State of Ohio to create a business relationship, and, therefore,

transacted business within this forum state by controlling its subsidiaries located therein.

### 2. WMI's Negotiations Directly Affected Ohio

Plaintiffs argue that WMI's negotiations to resolve environmental issues directly affected

the forum state. WMI was closely involved in basic environmental issues relating to American

---

[5] Plaintiffs argue that the evidence demonstrates that WMI controls its subsidiaries and the actions at its landfills. ECF No. 59 at 12. American Landfills's operations are managed by WMI's Senior Vice President-Midwest Group, Jeff Harris and WMI's president. ECF No. 59 at 12. American Landfill's senior employees are directly supervised by WMI's officers. ECF No. 59 at 12.

(5:10CV00119)

Landfill. ECF No. 24 at 5. Louis Bull is WMI's director whom Plaintiffs allege played an active role in dealing with Ohio Environmental Protection Agency ("EPA") regarding American Landfill's recent expansion project. ECF No. 24-10. Director Bull worked on issues regarding the Ohio EPA's regulatory interpretations, and met with Ohio EPA representatives to negotiate these matters. ECF No. 24-11. Resolution of environmental issues relating to the expansion required WMI's approval as indicated by American Landfill engineering manager Mohamed Ali's meeting notes specifying the following: "Dave and M. Ali to get [WMI to] buy in on UMAS [uppermost aquifer system] issue and eastern area unconsolidated material excavation." ECF No. 24-6 at 59. Plaintiffs, therefore, contend that the negotiations directly affected the forum state, which establishes "transacting business."

### 3. WMI Contracted to Supply Goods and Services in the Forum State

Plaintiff argues that WMI directly contracted with third parties that provided services to co-Defendant American Landfill. ECF No. 24 at 5; see *Shaker Construction*, 2008 WL 4346777 at *10-11 (transacting business requires a continuing obligation connecting the nonresident defendant to the state or some terms of the agreement that affect the state). For example, WMI entered into an agreement with Geochemical Testing for laboratory testing work for American Landfill (ECF No. 23-13 at 1); and an agreement with EMCON/OWT, Inc. to provide consulting services for American Landfill (ECF No. 24-13 at 7). The record reflects that Waste Management Holdings, Inc. entered into an agreement with Geochemical Testing for lab work for American Landfill. ECF No. 24-13 at 8. WMI's negotiations and contractual obligations with third parties on behalf of Waste Management District, therefore, constitutes a continuing

-8-

(5:10CV00119)

obligation connecting WMI to the forum state.

The Court finds that the circumstances described above show that WMI has transacted business by (1) reaching out to the forum state to create business relationships, (2) negotiating terms that affected the forum state, and (3) contracting to supply landfill services in Ohio. Accordingly, Ohio's long-arm jurisdiction is applicable.

### B. Due Process

The next step of the inquiry, as indicated above, is whether granting jurisdiction would deprive WMI of due process of law. The foundation of personal jurisdiction due process analysis is that a defendant not physically present in a forum must have "certain minimum contacts with [that forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" See _Int'l Shoe v. State of Washington_, 326 U.S. 310, 316 (1945) (quoting _Milliken v. Meyer_, 311 U.S. 457, 463 (1940). Minimum contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." _World-Wide Volkswagon Corp. v. Woodson_, 444 U.S. 286, 297 (1980). It is necessary that the defendant "purposely avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." _Burger King Corp., v. Rudzewicz_, 471 U.S. 462, 475 (1985); see also _Dean v. Motel 6 Operating L.P._, 134 F.3d 1269, 1273 (6th Cir. 1998). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." _Id_. "'Random,' 'fortuitous,' or 'attenuated' activity is not a constitutionally adequate basis for

(5:10CV00119)

jurisdiction." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

The Supreme Court distinguishes between "general" and "specific" jurisdiction. Either one, however, is an adequate basis for personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 472, 473 n.15. General jurisdiction is proper only where a "defendant's contacts with the forum state are of such a continuous and systemic nature that the state may exercise personal jurisdiction over the defendant even if the action filed is unrelated to the defendant's contacts with the state." *Bird v. Parsons*, 289 F.3d 865,873 (6th Cir. 2002) (quoting *Third Nat'l. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). Specific jurisdiction over the defendant is permissible only if the defendant's contacts with Ohio satisfy the three-part test that the Sixth Circuit established in *S. Machine Company v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The Court notes that specific jurisdiction has been upheld in cases where doing so required the defendant to travel. *See Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 911-12 (6th Cir. 1988) (upholding jurisdiction in Michigan over Illinois defendant); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170-71 (6th Cir. 1988) (allowing jurisdiction in Michigan over California defendant).

### 1. General Jurisdiction

WMI argues that it is not subject to general jurisdiction because WMI does not itself have any systematic and continuous ties to Ohio. ECF No. 54 at 8. WMI alleges that Plaintiffs attempt to "pierce the corporate veil" by painting WMI as the *alter ego* of co-Defendant American Landfill. ECF No. 54 at 8. WMI contends that it is not American Landfill's *alter ego* as evidenced by the record's failure to reflect that WMI has "any ownership interests in or

-10-

(5:10CV00119)

exercises any control over [American Landfill] . . . ." ECF No. 54 at 8.

Despite Plaintiffs' retort that WMI's "operating a landfill certainly constitutes contacts of a "continuous and systematic nature," ECF No. 54 at 12 (citing *Bird*, 289 F.3d at 873), the Court agrees with WMI. General jurisdiction has not been established. The Court, mindful that personal jurisdiction may be adequately based upon either general or specific jurisdiction, finds, however, that it has specific jurisdiction over WMI in the instant matter. *See Burger King, Corp.*, 471 U.S. at 475.

### 2. Specific Jurisdiction

WMI claims that Plaintiffs cannot establish specific jurisdiction because Plaintiffs have not made a *prima facie* showing and further cannot satisfy the requirements of due process. ECF No. 54 at 10. To establish specific jurisdiction, Plaintiff must demonstrate that such an exercise would not "offend traditional notions of fair play and substantial justice." *Bird*, 289 F.3d at 871-72. As stated above, to make a *prima facie* showing of jurisdiction the plaintiff must satisfy a three-part test: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.* (quoting *Mahasco Indus., Inc.*, 401 F.2d at 381).

### i. Purposeful Availment

Generally, "'purposeful availment' is something akin to deliberate[ly] undertaking to do,

(5:10CV00119)

or cause an act, or thing to be done…or conduct which can be properly regarded as a prime generating cause of the effects resulting in . . . something more than a passive availment of . . . opportunities." *Neogen*, 282 F.3d at 891 (quoting *Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 819 (1978)). It is necessary that a defendant "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475.

The Sixth Circuit has held that where it is shown that one party reasonably expects to conduct a given level of business in the forum state continuously, the plaintiff has established a *prima facie* jurisdiction case. *CompuServe Inc.*, 89 F.3d at 1265. "The test is whether the absolute amount of business conducted by the defendants in the state represents something more than 'random, fortuitous, or attenuated contacts with the state.'" *Neogen*, 282 F.3d at 892 (quoting *Burger King Corp.*, 471 U.S. at 475). This requirement does not mean that a defendant must be physically present in the forum state. *Burger King Corp.*, 471 U.S. at 476. A defendant has "purposefully availed" himself of a forum by engaging in activity that should provide "fair warning" that he may have to defend a lawsuit there. *See World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (explaining that a purposeful availment requirement assures that defendant will be aware that it is subject to suit in a forum state).

The Supreme Court has found that "a single act may meet the purposeful availment requirement." *Youn v. Track, Inc.*, 324 F.3d 409, 419; *see also McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (finding that a single contract, entered into by mail with a forum state resident, could meet the minimum contacts test for suit on the contract). Moreover, a defendant

-12-

(5:10CV00119)

has purposefully availed himself of the opportunity of acting in that state if he should have

reasonably foreseen that the transaction would have consequences in that state. *CompuServ Inc.*,

89 F.3d at 1265.

In the instant matter, Plaintiffs argue that WMI directed activities in the forum state that

caused consequences within the forum state such that WMI should have reasonably foreseen that

it could be haled into an Ohio court as a result. Plaintiffs assert that the Resource Conservation

and Recovery Act cause of action arises from WMI's purposeful activities in Ohio. ECF No. 59

at 12. For example, Plaintiffs allege that American Landfill has (1) improperly handled and

disposed of, and will continue to improperly handle and dispose of, solid and hazardous waste,

hazardous waste constituents, landfill gas, leachate, contaminants and other substances including

hazardous substances at American Landfill; and (2) emitted and released, and will continue to

emit and release, landfill wastes into the air, soil, sediments and water (including ground water

and surface water) at and about the American Landfill. ECF Nos. 1 at 3; 50 at 3. Plaintiffs

further argue that WMI solely or through a network of WMI's subsidiaries allegedly engaged in

and is thus responsible for the following: (1) environmentally related activities such as,

conducting environmental audits and compliance evaluations and managing American Landfill's

landfill gas; (2) current and ongoing violations; (3) actual and threatened human and

environmental exposure; and (4) air, soil, groundwater and surface water contamination. ECF

Nos. 1 at 8; 50 at 8.

### ii. Cause of Action Arises from WMI's Activities

Generally, "if a defendant's contacts with the forum state are related to the operative facts

-13-

(5:10CV00119)

of the controversy, then an action will be deemed to have arisen from those contacts."

*CompuServ Inc.*, 89 F.3d at 1267.

Plaintiffs allege that WMI's contacts with the forum state are related to the federal

standards, regulations, conditions, requirements, and prohibitions pursuant to RCRA, 42 U.S.C.

§ 6972(a)(1)(A) and (B). ECF No. 59 at 12. Under RCRA, a citizen suit may be brought:

> against any person . . . and including any . . . past or present owner or operator of a
> treatment, storage, or disposal facility, who has contributed or who is contributing
> to the past or present handling, storage, treatment, transportation, or disposal of
> any solid or hazardous waste which may present an imminent and substantial
> endangerment to health or the environment . . . .

42 U.S.C.A. § 6972(a)(1)(B). ECF No. 59 at 13. Plaintiffs' claims of federal violations stem

from WMI's operation and control over American Landfill. ECF No. 59 at 12. Under RCRA,

Plaintiffs contend that WMI is an "owner" and/or "operator" of the American Landfill. ECF No.

59 at 3.

The operative facts of the alleged violations of Resource Conservation and Recovery Act

rest upon to the contacts alleged to have occurred between WMI and Ohio. Therefore, Plaintiffs'

complaint alleging a violation of the Resource Conservation and Recovery Act arises directly

from the above contacts.

### iii. Reasonableness

Generally, if a court finds the first two elements of the *prima facie* case, then an inference

arises that the third element of reasonableness is also present. *CompuServ Inc.*, 89 F.3d at 1268.

The factors to consider in assessing reasonableness are:

> the burden on the defendant, the interests of the forum State, and the plaintiff's
> interest in obtaining relief. [A court] must also weigh in its determination 'the

-14-

(5:10CV00119)

> interstate judicial system's interest in obtaining the most efficient resolution of
> controversies; and the shared interest of the several States in furthering
> fundamental substantive social policies.'

*Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987) (quoting

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Upon considering the burden borne by WMI if haled into an Ohio court, the interests of

the State of Ohio, and Plaintiffs' interest in obtaining relief, the exercise of specific jurisdiction

over WMI is reasonable and fair.  There need not be the swelling of music or the rolling of

credits to persuade that the State of Ohio and Plaintiffs have a great interest in resolving alleged

violations of environmental laws such as the Resource Conservation and Recovery Act.

Plaintiffs have, therefore, made a *prima facie* showing that the exercise of specific jurisdiction

over WMI would not offend traditional notions of fair play and substantial justice.  Accordingly,

drawing all permissible inferences in favor of Plaintiffs, WMI may be haled into an Ohio court to

answer Plaintiffs' claims.

### III.  Conclusion

For the foregoing reasons, the Court denies Waste Management, Inc.'s motion to dismiss

for lack of personal jurisdiction.  ECF Nos. 21, 54.

IT IS SO ORDERED.

 September 30, 2011 
Date

Benita Y. Pearson
United States District Judge

-15-